## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

EMPAGRAN, S.A., <u>et al.</u>,

               **Plaintiffs,**

    v.

F. HOFFMAN-LA ROCHE LTD., <u>et al.</u>,

               **Defendants.**

                          **Civ. No. 00-01686 (TFH)**

## <u>MEMORANDUM OPINION</u>

Pending before the Court is a Motion for Relief from Final Judgment filed by the foreign Plaintiffs in this case, Empagran, S.A., Winddridge Pig Farm, Nutricion Animal, S.A., and Concern Stirol, on behalf of unidentified direct purchasers of vitamins from the European Union (also referred to as the "EU"). Pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, the Plaintiffs seek relief from the Court's April 26, 2002, Final Judgment dismissing their Amended Class Action Complaint and thereby refusing to exercise supplemental jurisdiction over claims premised on foreign law and customary international law that were asserted against the Defendants, F. Hoffman-LaRoche, Ltd., Hoffmann-LaRoche, Inc., BASF A.G., BASF Corporation, Aventis S.A., Rhone-Poulenc Animal Nutrition Inc., Hoechst Marion Rousell S.A., Takeda Chemical Industries, Ltd., Takeda Vitamin & Food USA, Inc., Daiichi Pharmaceuticals Co., Ltd., Eisai Co., Ltd., Eisai U.S.A., Inc., Akzo Nobel Chemicals B.V., Alusuisse Lonza Group Ltd., Lonza A.G., Lonza Inc., Bioproducts, Inc., Degussa-Huls AG, Degussa Huls Corporation, DuCoa, L.P., DCV, Inc., Mitsui & Co., Ltd., Nepera Inc., Sumitomo Chemical Co., Ltd., Tanabe Seiyaku Co. Ltd., UCB S.A., Chinook Group Ltd., and Cope Investments Limited.

Pls.' Mot. for Relief from Final J. 1 [hereinafter "Pls.' Mot. ___"].  The Plaintiffs argue that

"important developments have occurred in the EU that give cause for this Court to reconsider its

refusal to exercise supplemental jurisdiction over the foreign law claims of EU Plaintiffs in this

case."  Pls.' Mem. Supp. Mot. Relief Final J. 5 [hereinafter "Pls.' Mem. ___"].  The Plaintiffs

further request that the Court exercise supplemental jurisdiction over a $10 million settlement

reached in December 2003 with defendants E. Merck, Merck KgaA and E.M. Industries, Inc.

(a/k/a E.M.D. Chemicals, Inc.) [hereinafter referred to as the "Merck Settlement"].  Id. at 32.

After careful consideration of the legal briefs submitted by the parties in support of their

respective positions, the arguments presented at the hearing held on June 29, 2006, as well as the

entire record in this case, the Court will deny the Plaintiffs' motion for the reasons that follow.

## BACKGROUND

On June 7, 2001, the Court issued a Memorandum Opinion and Order that dismissed the

Plaintiffs' federal antitrust claims because the Plaintiffs failed to establish that their injuries were

caused by conduct resulting in a direct, substantial and reasonably foreseeable effect on United

States commerce.  Empagran, S.A. v. Hoffman-La Roche Ltd., No. 00-CV-1686, 2001 U.S. Dist.

LEXIS 20910, at *12-13 (D.D.C. June 7, 2001).  The Court also declined to exercise

supplemental jurisdiction over the Plaintiffs' claims based on foreign law and alleged violations

of customary international law.  Id. at *23-30.  With regard to the foreign-law claims, the Court

identified a number of factors that counseled against exercising supplemental jurisdiction,

including the fact that the claims raised novel and complex issues of foreign law, the Court

dismissed all the federal antitrust claims for lack of subject matter jurisdiction, and comity and

judicial efficiency warranted such a result.  Id. at *26.  The Court further held that the Plaintiffs'

claims based on customary international law lacked viability because:

2

> Plaintiffs cite no caselaw establishing a customary international law of antitrust.  Given the absence of any authority establishing such a cause of action, the Court cannot find that there exists a customary international law proscribing the conduct of which plaintiffs complain in this action.  Therefore, it is unnecessary for the Court to reach the issue of whether the law requires state action.  Accordingly, Count Three of the Amended Complaint should be dismissed for failure to state a claim upon which relief may be granted.

Id. at *29.  Accordingly, the Court issued an order on April 26, 2002, entering judgment in favor of the Defendants and dismissing the Plaintiffs' Amended Class Action Complaint.  The Plaintiffs subsequently appealed.

On appeal, the United States Court of Appeals for the District of Columbia Circuit issued a divided opinion reversing and remanding on the ground that "where the anticompetitive conduct has the requisite harm on United States commerce, FTAIA [the Foreign Trade Antitrust Improvements Act] permits suits by foreign plaintiffs who are injured solely by that conduct's effect on foreign commerce."  Empagran S.A. v. F. Hoffman-La Roche, Ltd., 315 F.3d 338, 341 (D.C. Cir. 2003).  The United States Supreme Court, however, granted certiorari and unanimously vacated the D.C. Circuit's decision, concluding that a Sherman Act claim is not viable under the FTAIA if the adverse foreign effect of price-fixing conduct is independent of the adverse domestic effect.  F. Hoffman-La Roche, Ltd. v. Empagran S.A., 542 U.S. 155, 173 (2004).  The Supreme Court then remanded the case back to the D.C. Circuit to consider the Plaintiffs' alternate argument that the adverse foreign effect was dependent on the adverse domestic effect.[1]  Id. at 175 (noting that the D.C. Circuit had not considered the Plaintiffs'

---

[1]     The Supreme Court also invited the D.C. Circuit to determine whether the Plaintiffs properly preserved their argument that the foreign injury was dependent on the domestic conduct.  F. Hoffman-La Roche, Ltd., 542 U.S. at 175.  By a separate decision on remand, the D.C. Circuit concluded that the argument was preserved.  Empagran S.A. v. F. Hoffman-LaRoche, Ltd., 388 F.3d 337, 344 (D.C. Cir. 2004).

argument that the foreign injury would not have occurred "but for" the adverse domestic effect of high prices in the United States).  On remand, the D.C. Circuit applied a proximate-cause analysis and concluded that "the domestic effects the [Plaintiffs'] cite did not give rise to their claimed injuries so as to bring their Sherman Act claim within the FTAIA exception."  Empagran S.A. v. F. Hoffman-LaRoche, Ltd., 417 F.3d 1267, 1271 (D.C. Cir. 2005).  The Supreme Court denied certiorari on January 9, 2006.  Empagran S.A. v. F. Hoffman-LaRoche, Ltd., 126 S. Ct. 1043 (2006).

## DISCUSSION

Rule 60(b)(6) of the Federal Rules of Civil Procedure authorizes the Court to relieve a party from a final judgment or order for any reason justifying such relief.  Fed. R. Civ. P. 60(b).  The relief afforded by Rule 60(b)(6) is not freely given, however, and is reserved for those circumstances that are deemed to be "extraordinary."  See, e.g., Computer Prof'ls for Soc. Responsibility v. United States Secret Serv., 72 F.3d 897, 903 (D.C. Cir. 1996).  Indeed, the D.C. Circuit has stated that "under Rule 60(b)(6) 'relief should be only sparingly used.'"  Id.; accord United States v. Pollard, 290 F. Supp. 2d 153, 157 (D.D.C. 2003) (citing Good Luck Nursing Home, Inc. v. Harris, 636 F.2d 572, 577 (D.C. Cir. 1980)).  The decision whether to grant a Rule 60(b)(6) motion is left to the Court's sound discretion and may be reversed only for abuse of that discretion.  Computer Prof'ls for Soc. Responsibility, 72 F.3d at 903.

The Plaintiffs argue that relief is warranted and their request involves a matter of extraordinary circumstance because there is no adequate mechanism for the private enforcement of antitrust laws in the member States of the European Union, in spite of the "unequivocal admonition by EU officials that price fixing cartels are in essence per se unlawful and cartel

members must be civilly accountable to the market of wronged victims."[2]  Pls.' Mem. 5.  As a

result, in the absence of this Court exercising jurisdiction over their claims against the

Defendants, the Plaintiffs "will be left with no effective procedural means by which to seek

relief" and the Defendants will be "unjustly rewarded by retaining admittedly ill-gotten profits."

Id. at 11.

The Defendants oppose the Plaintiffs' request to reopen the lawsuit on the grounds that

(1) the Plaintiffs lack standing to pursue relief under European Union law because they "never

asserted that they are EU entities, purchased vitamins from EU entities or have claims under EU

law[,]" (2) the Plaintiffs failed to demonstrate "extraordinary circumstances" entitling them to

Rule 60(b)(6) relief, (3) the Court lacks original jurisdiction over this action so there is no basis

for exercising supplemental jurisdiction, and (4) the facts implicate several of the factors

identified in 28 U.S.C. § 1367(c) that favor declining to exercise jurisdiction.  Defs.' Mem. of P.

& A. In Opp'n to Pls.' Mot. for Relief from Final J. 1-4 [hereinafter "Defs.' Opp'n ___"].  The

Defendants further argue that the Court should refuse to exercise jurisdiction over the Merck

Settlement "for all the same reasons that the Court should decline jurisdiction over the EU law

claims."  Id. at 23.

**I.**

---

[2]     The Plaintiffs cite several sources to support their claim that European Union
officials unequivocally admonish price-fixing cartels as unlawful and recognize
that cartel members should be held liable for injuries via private civil lawsuits, the
most significant of which, according to the Plaintiffs, is a December 12, 2005
document presented by the Commission of the European Communities that is
titled "Green Paper:  Damages Actions for Breach of the EC Antitrust Rules"
[hereinafter referred to as the "Green Paper"].  E.g., Pls.' Mem. 5-10 (citing a
recent decision by an Italian court, statements published on the European Union's
official internet web site, and statements by officials of the European
Commission's Competition Directorate-General, among other sources).

The Court must first consider whether the Plaintiffs have standing to pursue their Rule 60(b)(6) motion given that they are not direct vitamins purchasers from the European Union.[3] Noting that "[w]e have 'an obligation to assure ourselves' of litigants' standing under Article III" of the United States Constitution, the Supreme Court has observed that "'no principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies.'" DaimlerChrysler Corp. v. Cuno, ___ U.S. ___ (2006) (quoting Raines v. Byrd, 521 U.S. 811, 818 (1997) (quoting Simon v. Eastern Ky. Welfare Rights Org., 426 U.S. 26, 37 (1976))).  As the Supreme Court explained:

> The case-or-controversy requirement thus plays a critical role, and 'Article III standing . . . enforces the Constitution's case-or-controversy requirement.'  The 'core component' of the requirement that a litigant have standing to invoke the authority of a federal court 'is an essential unchanging part of the case-or-controversy requirement of Article III.'  The requisite elements of this 'core component derived directly from the Constitution' are familiar: 'A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'

Id. (citations omitted).  Accordingly, although it seems clear that, as a general proposition, the Plaintiffs have standing to pursue Rule 60(b) relief regarding the Court's April 26, 2002, Order dismissing their Amended Class Action Complaint, the question nevertheless remains whether they have standing to advance the asserted basis for requesting that relief, which is premised on purported violations of European Union antitrust law and the resulting harm to direct vitamins purchasers in the European Union.

---

[3]   The Defendants contend that the Plaintiffs are domiciled in Ecuador, Panama, Australia and Ukraine.  Defs.' Opp'n 10.  In their reply brief, the Plaintiffs concede that they lack a named plaintiff from the European Union but claim that "an EU plaintiff intends to step forward as a new class representative if the Court grants Plaintiffs' motion."  Pls.' Reply in Supp. of Their Mot. for Relief from Final J. 4 [hereinafter "Pls.' Reply ___"].

The Defendants challenge the Court's jurisdiction to adjudicate the claims of European Union direct purchasers of vitamins given that the Plaintiffs are not themselves European Union direct vitamin purchasers "and thus would not even benefit from the relief they request."  Defs.' Opp'n at 2.  The Defendants cite Bailey v. Patterson, 369 U.S. 31, 32-33 (1962), and Long v. District of Columbia, 469 F.2d 927, 930 (D.C. Cir. 1972), to support the argument that "[u]nder Article III, for any lawsuit to proceed, even as a class action, there must be an actual plaintiff with a claim before the Court."  Id.  In both cases, which are controlling in this jurisdiction, the courts held that the named appellants lacked standing to raise constitutional challenges to statutes that were never enforced against them – notwithstanding their claims that they were seeking relief on behalf of putative class members who were, in fact, prosecuted under the statutes. Bailey, 369 U.S. at 32-33; Long, 469 F.2d at 929.

In Bailey, the appellants initiated a civil rights action "on behalf of themselves and others similarly situated" to enforce their constitutional right to nonsegregated service in transportation. 369 U.S. at 32.  The appellants also sought to enjoin criminal prosecutions under a Mississippi breach-of-peace statute.  Id.  Without elaboration, the Supreme Court held that the appellants "lack standing to enjoin criminal prosecutions under Mississippi's breach-of-peace statutes, since they do not allege that they have been prosecuted or threatened with prosecution under them." Id.  Accordingly, the Supreme Court stated that "[t]hey cannot represent a class of whom they are not a part."  Id. at 32-33.

Similarly, in Long the appellant pursued a class action on behalf of himself and other similarly-situated individuals "to enjoin the police from stopping and frisking individuals in any manner not in accord with their constitutional rights" after he was questioned and frisked by police without arrest while shopping in a jewelry store.  469 F.2d at 928-29.  The appellant

sought to challenge a District of Columbia statute that authorized police to question any arrested person for a maximum of three hours and a federal statute that provided that an arrested person's voluntary confession would not be rendered inadmissible because of delays bringing the person before a "committing magistrate." Id. The D.C. Circuit determined that neither statute was "applicable" because the appellant was not arrested and "no confession was offered or taken by the police." Id. at 930. The D.C. Circuit stated that "[t]here is, therefore, no factual predicate giving rise to a case or controversy under either of the statutes." Id. The D.C. Circuit further observed that:

> Appellant's attack on the two statutes is not saved by his allegation that he represents a class that has been the subject of police action based upon the statutes. As we have seen, appellant is not a member of the class of people who have been subject to action based upon the statutes. *A person simply cannot represent a class of which he is not a member.*

Id. (emphasis added).

Although the Plaintiffs concede that they are not members of the putative class of European Union direct vitamins purchasers they purport to represent,[4] they nevertheless attempt to distinguish the Bailey and Long decisions on factual grounds by arguing that the plaintiffs in those cases "never had standing to assert the claims they had pled[,]" whereas the Plaintiffs in the instant case "have standing to assert the claims pled in their complaint" but "now seek relief from the final judgment as to a narrower set of claims for the benefit of absent members of the putative class they sought to represent." Pls.' Reply 5 (emphasis omitted). To support this argument, the Plaintiffs cite to cases in which "courts have permitted class representatives to appeal a judgment

---

[4]     See, supra note 3 (citing the Plaintiffs' reply brief, in which they recognize the lack of a European Union director vitamins purchaser as a named plaintiff); Pls.' Reply 4 (acknowledging the "absence of a named plaintiff from the EU").

on behalf of absent class members even though their own individual claims were moot." Id. The Plaintiffs also argue that "the absence of a named plaintiff from the EU is irrelevant at this stage" because "the current plaintiffs can seek Rule 60(b) relief on behalf of absent members of the putative class they sought to represent." Id. at 4. The Plaintiffs neglect to cite any authority to support this argument, however. Id. The Plaintiffs also claim that "an EU plaintiff intends to step forward as a new class representative if the Court grants Plaintiffs' motion[,]" but they do not identify this purported European Union plaintiff and proffer no evidence to support this claim, such as an affidavit or declaration confirming the assertion.[5] Id. at 5. The Plaintiffs further argue that the standing rules for Rule 60(b) motions "can be 'flexible'" and cite to Grace v. Bank Leumi Trust Co., 443 F.3d 180, 188 (2d Cir. 2006), as support. Id. at 4-5.

As an initial observation, the Plaintiffs' standing to pursue the claims pled in their Amended Class Action Complaint does not appear to have been tested during any prior proceeding, so their mere assertion of standing is not authoritative, particularly with regard to their putative representation of European Union direct vitamins purchasers. See Pl's Reply 5 (stating that "Plaintiffs did have standing to assert the claims pled in their complaint"). Whether the Plaintiffs had standing to pursue their original claims as framed in the Amended Class Action Complaint is not dispositive of the question now before the court, which is whether they have standing to pursue the specific basis for requesting Rule 60(b)(6) relief on behalf of European Union direct vitamins purchasers when they are not themselves European Union direct vitamins purchasers and no other qualifying plaintiff was ever named to represent such a class. The Plaintiffs' citation to Deposit Guar. Nat'l Bank v. Roper, 445 U.S. 326 (1980), and United States

_____

[5]     Nor has any European Union direct vitamins purchaser intervened in this case on behalf of such plaintiffs as a class.

Parole Comm'n v. Geraghty, 445 U.S. 388 (1980), as support for their argument that they have

standing to pursue a Rule 60(b) motion on behalf of absent European Union vitamins purchasers

is somewhat misplaced.[6]  Both cases involved the question of whether a named plaintiff may

appeal a district court's denial of class certification despite the fact that the plaintiff's individual

claim was moot.  Roper, 445 U.S. at 327; Geraghty, 445 U.S. at 390.  In Roper, the plaintiffs'

claims were rendered moot when the defendants tendered to each named plaintiff the maximum

amount recoverable for their claims, which resulted in the district court entering judgment in the

plaintiffs' favor and dismissing the case over their objections.  445 U.S. at 329-30.  The named

plaintiff in Geraghty challenged the validity of the United States Parole Commission's Parole

Release Guidelines but was released from prison before his appeal was briefed, thereby rendering

his individual claims moot.  445 U.S. at 394.  Neither case involved facts suggesting that the

plaintiffs sought to pursue relief on behalf of a class of which they were not themselves a

---

[6]     The Plaintiffs' citation to Grace v. Bank Leumi Trust Co., 443 F.3d 180, 188 (2d
Cir. 2006), for the argument that "standing rules can be 'flexible'" is equally
unavailing.  Pls.' Reply 4.  In Grace, the United States Court of Appeals for the
Second Circuit held that non-party movants sufficiently connected and identified
with a suit had standing to invoke Rule 60(b)(6).  443 F.3d at 188 (citing Dunlop
v. Pan Am. World Airways, 672 F.2d 1044 1052 (2d Cir. 1982)).  The court in
Grace made clear, however, that its decision was limited "to the facts of this case"
and held that "where plaintiffs enter into a settlement agreement with a judgment-
proof, pro se defendant with the intent at the time of the settlement to collect from
a third party that allegedly received fraudulent conveyances, and further, they
attempt to use the judgment as a predicate for a fraudulent conveyance action
against the third party, the third party is 'strongly affected' by the judgment and
entitled to standing to bring a Rule 60(b) motion."  Id.  Further emphasizing that it
considered its holding to be limited to the particular circumstances of that case,
the court explicitly stated that "[w]e thus carve out an exceedingly narrow
exception to the well-established rule that litigants, who were neither a party, nor
a party's legal representative to a judgment, lack standing to question a judgment
under Rule 60(b)."  Id. at 189.  The Plaintiffs' resort to this case for a liberal
interpretation of standing as it applies in the context of a Rule 60(b)(6) motion is,
therefore, unpersuasive.

member.

Furthermore, the Supreme Court's decisions in <u>Roper</u> and <u>Geraghty</u> hinged on a determination that the named plaintiffs retained a "personal stake" in the class certification decision that did not offend Article III justiciability concerns and therefore properly could be pursued on appeal – in spite of the mootness of the class representatives' individual claims on the merits. <u>Roper</u>, 445 U.S. at 336-40; <u>Geraghty</u>, 445 U.S. at 404. In <u>Roper</u>, the Supreme Court acknowledged that a named plaintiff retains an economic stake in class certification. 445 U.S. at 338 (discussing the advantages of fee-spreading and contingent-fee arrangements to motivate lawsuits "that for economic reasons might not be brought otherwise"). In <u>Geraghty</u>, the Supreme Court observed that a mooted plaintiff's pursuit of the class-certification issue shares the same imperatives of the personal stake requirement and, therefore, "[t]he proposed representative retains a 'personal stake' in obtaining class certification sufficient to assure that Art. III values are not undermined." 445 U.S. at 404. Neither case supports the Plaintiffs' contention that they should be permitted to seek Rule 60(b)(6) relief on behalf of absent class members asserting claims for which the Plaintiffs never had a personal stake in the first place. The Court further notes that the decision to grant or deny the Plaintiffs' requested Rule 60(b)(6) relief in no way implicates their interests in class representation given that they have no standing to assert claims on behalf of a class to which they do not belong.[7]

---

[7]     The Supreme Court in <u>Roper</u> identified the interests to be considered when evaluating the question of justiciability in the class action context, including the named plaintiffs' personal stake in the substantive controversy and right to employ Rule 23 certification to pursue their individual claims, the responsibility of the named plaintiffs to represent the class, the rights of putative class members as possible intervenors and "the responsibilities of a district court to protect both the absent class and the integrity of the judicial process by monitoring the actions of the parties before it." 445 U.S. at 331. As this Court has indicated, however, the named Plaintiffs in this case lack any personal stake in the substantive

Consequently, it appears that the facts of the pending case are more consonant with Bailey and Long than with Roper and Geraghty.  The holdings in Bailey and Long counsel against recognizing standing in a case such as this in which the Plaintiffs are not themselves members of the class for which they seek relief, namely European Union direct vitamins purchasers.  Thus, even if the Court did elect to reconsider its prior judgment and reopen the case, the Plaintiffs would lack standing to assert claims based on European Union antitrust law. It therefore logically follows that, if the Plaintiffs lack standing to pursue the very claims for which they seek Rule 60(b)(6) relief, then they cannot establish the "extraordinary circumstances" that warrant this Court granting such relief and disturbing the finality of the judgment entered several years ago.

---

controversy regarding European direct vitamins purchasers' claims under European Union antitrust laws.  Furthermore, the Plaintiffs' right to Rule 23 certification to pursue their individual claims is not implicated since they lack standing to pursue claims based on European Union antitrust law and their individual injuries and requests for a remedy were not premised on that law. Finally, the rights and interests of the absent class members are not infringed in any way by denying Rule 60(b)(6) relief in this instance.  No European Union direct vitamins purchaser has ever moved to intervene in this case and, because no class was ever certified, the Court's prior judgment of dismissal impacted only the named Plaintiffs' claims; accordingly, European Union direct vitamins purchasers are free to pursue a separate lawsuit under European Union antitrust law, as a class action or otherwise, assuming they can establish proper jurisdiction.

## II.

The Court also is unconvinced that it would be appropriate in this case to exercise

supplemental jurisdiction over the claims of European Union direct vitamins purchasers for

alleged violations of European Union antitrust laws.  Whether the Court may exercise

supplemental jurisdiction over a legal claim is governed by 28 U.S.C. § 1367(a), which provides

that:

> (a) Except as provided in subsections (b) and (c) or as expressly provided
> otherwise by Federal statute, in any civil action of which the district courts have
> original jurisdiction, the district courts shall have supplemental jurisdiction over
> all other claims that are so related to claims in the action within such original
> jurisdiction that they form part of the same case or controversy under Article III of
> the United States Constitution. Such supplemental jurisdiction shall include
> claims that involve the joinder or intervention of additional parties.
>
> * * *
>
> (c) The district courts may decline to exercise supplemental jurisdiction over a
> claim under subsection (a) if—
>
>> (1) the claim raises a novel or complex issue of State law,
>>
>> (2) the claim substantially predominates over the claim or claims
>> over which the district court has original jurisdiction,
>>
>> (3) the district court has dismissed all claims over which it has
>> original jurisdiction, or
>>
>> (4) in exceptional circumstances, there are other compelling
>> reasons for declining jurisdiction.

28 U.S.C. § 1367(a).  The determination of whether a claim is supplemental to an original claim

is guided by the established principle that the claim "must derive from a common nucleus of

operative fact" such that the plaintiff "would ordinarily be expected to try them all in one judicial

proceeding."  United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966).  In the final

analysis, however, the decision to exercise supplemental jurisdiction is within the sound

discretion of the Court.  See, e.g., Diven v. Amalgamated Transit Union, 38 F.3d 598, 602 (D.C. Cir. 1994) (stating that "our review of the district court's judgment must be quite deferential; the abuse of discretion standard applies").

The Plaintiffs contend that exercising supplemental jurisdiction over the European Union direct vitamins purchasers' claims is proper in this case because the Court "has original jurisdiction over the claims asserted by other plaintiffs against these same Defendants for the same conduct."[8]  Pls.' Reply 8.  The Plaintiffs cite Lindsay v. Gov't Employees Ins. Co., No. 05-7046, 2005 U.S. App. LEXIS 25652, at *11 (D.D.C. May 26, 2006), to support their argument that so long as the Court has jurisdiction over a single claim, it may exercise supplemental jurisdiction over any other claim that is part of the same case or controversy.  Id.  The crux of the Plaintiffs' argument is that the Court should exercise "pendent-party jurisdiction" pursuant to 28 U.S.C. § 1367 and they cite Exxon Mobil Corp. v. Allapattah Servs., Inc., 125 S. Ct. 2611, 2621 (2005), as authority for the argument that 28 U.S.C. § 1367 affords broad jurisdiction over both pendent-claim and pendent-party cases.[9]  Pls.' Mem. 13.  The Plaintiffs also cite Brazinski v.

---

[8]     The Plaintiffs appear to premise this argument on that fact that, at the time the Court entered final judgment, it had original jurisdiction "over the many actions brought by various plaintiffs alleging that Defendants' global price-fixing conspiracy violated federal law."  Pls.' Reply 10-11.  The Plaintiffs further argue that "[s]ome of these actions continue to be pending before this Court" and cite as examples the DuCoa L.P. and DCV post-judgment proceedings and the Court's continuing jurisdiction over their settlement agreements.  Id. at 11 n.9.

[9]     The Exxon case was the first in which the Supreme Court considered "whether a federal court in a diversity action may exercise supplemental jurisdiction over additional plaintiffs whose claims do not satisfy the minimum amount-in-controversy requirement, provided the claims are part of the same case or controversy as the claims of plaintiffs who do allege a sufficient amount in controversy."  125 S. Ct. at 2615.  During its analysis of the issue, the Supreme Court noted that "Section 1367(a) is a broad grant of supplemental jurisdiction over other claims within the same case or controversy, as long as the action is one in which the district courts would have original jurisdiction."  Id. at 2620.

Amoco Petroleum Additives Co., 6 F.3d 1176 (7th Cir. 1993), Ouedraogo v. Durso Assoc., Inc.,

No. 03 CV 1851, 2005 WL 1423308 at *2 (S.D.N.Y. June 16, 2005), and Ansoumana v.

Gristede's Operating Corp., No. 00 CV 253, 2001 U.S. Dist. LEXIS 6717 at *47-50 (S.D.N.Y.

May 24, 2001), for the same argument.  Pls.' Mem. 15-17.  The Plaintiffs further cite Ortman v.

Stanray Corp., 371 F.2d 154 (7th Cir. 1967), for the argument that a court has "authority to take

jurisdiction over foreign claims that are ancillary to domestic claims."  Id. at 13.

        The Defendants counter that supplemental jurisdiction over the Plaintiffs' European

Union claims is inappropriate because "[t]his Court does not have original jurisdiction over any

claim in this action, because all claims that could have supplied a basis for original jurisdiction in

this action have long since been dismissed."  Defs.' Opp'n 15.  The Defendants cite Siegal v.

Consol. Edison, Inc., 318 F. Supp. 2d 176 (S.D.N.Y. 2004), for their contention that the Plaintiffs

may not resort to another case that is "consolidated" in the Vitamins Multidistrict Litigation[10] to

establish original jurisdiction for the supplemental claims they are trying to attach here.  Defs.'

Opp'n 17.  In Siegel, the plaintiff was a shareholder who sought to represent a class of

shareholders in a lawsuit against the defendant, Consolidated Edison, Inc., for breach of a merger

agreement according to which the shareholders would have sold all their shares to the defendant

for a "substantial premium."  318 F. Supp. 2d at 177.  The defendant and an intervenor moved to

dismiss on the ground that the plaintiff failed to establish diversity jurisdiction by alleging an

---

    Otherwise, though, the Exxon case has only minor application to the issues
    presently before the Court since it dealt with diversity jurisdiction and not federal
    question jurisdiction, albeit federal question jurisdiction was discussed in the
    analysis.

[10]    This Court has presided over a number of cases involving vitamins purchasers that
    were transferred pursuant to an order from the Judicial Panel on Multidistrict
    Litigation.

amount-in-controversy exceeding $75,000.  Id.  The plaintiff responded by asserting, among

other arguments, that the district court could exercise supplemental jurisdiction pursuant to 28

U.S.C.  § 1367(a) because the district court had original jurisdiction over a related, but

independent, action involving the same merger agreement.  Id.  The district court held that it

could not exercise supplemental jurisdiction on that basis because the plaintiff was "seeking

supplemental jurisdiction over a new, independent, and freestanding civil action" that was not

"supplemental to any case properly within the jurisdiction of this Court."  Id. at 179.

 As the Defendants correctly note, the claims the Plaintiffs point to in this case to establish

original jurisdiction were dismissed some time ago.  As a result, there is no claim pending before

the Court to establish original jurisdiction and the Plaintiffs cited no case indicating that

supplemental jurisdiction may be established based on prior claims no longer before the Court.

The Court also is unaware of any cases that support the Plaintiffs' argument that a completely

independent lawsuit pending under a different case number may serve as the basis for original

jurisdiction in the instant case[11] – the Plaintiffs' citation to Brazinski, Ouedraogo and Ansoumana

---

[11] The Plaintiffs argue that "[a]s of the time this Court entered final judgment, it had original jurisdiction over the many actions brought by various plaintiffs alleging that Defendants' global price-fixing conspiracy violated federal law.  It therefore certainly had the power, under § 1367, to exercise supplemental jurisdiction."  Pls.' Reply 10-11.  The Plaintiffs cite Simcox v. McDermott Int'l, Inc., No. H-92-3014, 1993 U.S. Dist. LEXIS 18302 (S.D. Tex. Dec. 21, 1993), but that case involved the consolidation of two cases into a single case with a single case number.  1993 U.S. Dist. LEXIS 18302, at *2 (stating that "Civil Action No. G-93-679 was consolidated into Civil Action No. H-92-3014, previously pending before this court").  The cases involving vitamins purchasers that were transferred to this Court pursuant to an order from the Judicial Panel on Multidistrict Litigation were subject to coordinated pretrial proceedings but retained their independence from each other and have separate case numbers; therefore, the Plaintiffs may not establish original jurisdiction by latching on to one of those cases unless they attempt to file their claims in those respective cases under the applicable case numbers.

notwithstanding.  Contrary to the Plaintiffs' arguments, those cases do not stand for the broad proposition the Plaintiffs advance, and certainly do not support the exercise of supplemental jurisdiction over claims when original jurisdiction is premised solely on an independent lawsuit, as would be the case if the Court granted supplemental jurisdiction based on original jurisdiction in the other so-called "vitamins cases" that were coordinated by this Court pursuant to the provisions that govern multidistrict litigation.

The Plaintiffs' citation to <u>Ortman</u> suffers from the same infirmity.  It is of no consequence that the Court may exercise supplemental jurisdiction over foreign claims that are ancillary to domestic claims if those domestic claims are the subject of a lawsuit that is independent from the actual case in which the foreign claims are being asserted.  This result is compelled by the language of 28 U.S.C. § 1367, which states that "*in any civil action*" over which the Court has original jurisdiction it may also exercise supplemental jurisdiction, implying that the exercise of such supplemental jurisdiction will occur in the same lawsuit that establishes original jurisdiction.  28 U.S.C. § 1367 (emphasis added).  At this juncture in the case, there quite simply is no "hook" on which the Plaintiffs can viably hang their foreign-law claims because there is no existing claim over which the Court has original jurisdiction that would permit the exercise of supplemental jurisdiction.

Even if there was authority for the notion that supplemental jurisdiction may relate back to original jurisdiction over claims that no longer exist, it is well-established that "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."  <u>United Mine Workers of Am. v. Gibbs</u>, 383 U.S. 715, 726 (1966) (emphasis added).  Likewise, the D.C. Circuit has stated that:

> A district court may choose to retain jurisdiction over, or dismiss, pendent state law claims after federal claims are dismissed. 'In the usual case in which all

> federal-law claims are dismissed before trial, the balance of factors to be
> considered under the pendent jurisdiction doctrine–judicial economy,
> convenience, fairness, and comity–will point toward declining to exercise
> jurisdiction over the remaining state-law claims.'

Shekoyan v. Sibley Int'l, 409 F.3d 414, 423-24 (D.C. Cir. 2005).  Thus, in light of the well-

established precedent suggesting that the balance of factors typically favors dismissing

supplemental state law claims when all federal claims over which the Court exercised original

jurisdiction are dismissed before trial, the Court is disinclined to exercise supplemental

jurisdiction here, whether pendent-party or otherwise.  As the Court indicated in its prior decision

refusing to exercise supplemental jurisdiction over foreign-law claims, the factors of judicial

economy, convenience and comity require this result, particularly in light of the fact that no

European Union direct vitamins purchaser has yet surfaced in this case, the Court's judicial

resources and economy will be burdened by reopening the case to allow the Plaintiffs to pursue

claims they acknowledge will involve European witnesses and the application of novel, complex

and developing foreign law, and the Plaintiffs concede that "European Courts are finding it

acceptable to take jurisdiction over foreign purchaser claims where they arise from a single case

or controversy, as in the operation of an international cartel."[12]  Pls.' Mem. 20 (referring to the

---

[12]    The Plaintiffs essentially argue that, although private antitrust claims have been
litigated in European courts and there have been awards to private claimants as a
result, significant procedural and policy hurdles involved in instituting and
litigating such suits in Europe make individual litigation impractical and
ineffective.  Pls.' Reply 12.  The problem with this argument is that it begs the
question of whether European Union direct vitamins purchasers are simply
shopping for a more favorable forum, which was alluded to by the Defendants.
Defs.' Opp'n 12-14.  The Plaintiffs submitted several exhibits to their briefs that
they assert evidence the lack of adequate relief available to European Union
vitamins purchasers in European courts.  Pls.' Mem. Exs. 1-16; Pls.' Reply Exs.
1-11.  Upon review of the exhibits, however, it seems clear that the problem is not
the unavailability of an adequate mechanism to obtain relief, but quite simply the
procedural differences that make litigating in European courts less favorable from
the perspective of the economics of litigation and damages awards, such as the

decision in <u>Provimi Ltd. v. Aventis Animal Nutrition S.A.</u>, [2003] All ER (D) 59 (Jun), [2003] EWHC 1211 (Comm); Pls.' Reply 13.

The only factors that arguably weigh in favor of exercising supplemental jurisdiction are deterrence and fairness;[13] however, the significance of these factors is outweighed by the factors of judicial economy, convenience and comity, particularly when the Plaintiffs agree that cases are currently pending in the European Union, European Union courts are amenable to exercising jurisdiction over foreign purchaser claims, there are cases in which damages have been awarded

_____

lack of treble damages, the lack of procedures to aggregate plaintiffs as a class, and the lack of expansive discovery that might be available in the United States. <u>E.g.</u>, Clifford A. Jones, <u>Exporting Antitrust Courtrooms to the World: Private Enforcements in a Global Market</u>, 16 Loy. L. Rev. 409, 421 (2004) (comparing the development of private antitrust actions in the United States to foreign jurisdictions, particularly Europe); Donncadh Woods, Deputy Head of Unit, Directorate General for Competition Commission of the European Communities, Address at the Institute for Consumer Antitrust Studies, Loyola Univ. Chi.: The Future of Private Rights of Action in Antitrust (Feb. 20, 2004) (commenting about issues relating to private actions for breach of Community competition law and the reasons such actions have not resulted in meaningful damages awards).  The mere fact that foreign litigants may obtain larger damages awards at a lower cost to litigate here in the United States is not, in-and-of-itself, reason to ignore comity and permit jurisdiction over foreign plaintiffs pursuing foreign-law claims, especially when the European Union is in the process of attempting to "stimulate" private actions for antitrust violations in its own jurisdictions.  <u>E.g.</u>, Commision Green Paper on Damages Actions for Breach of the EC Antitrust Rules (Dec. 12, 2005), <u>available at</u> http://ec.europa.eu/comm/competition/antitrust/others/ actions_for_damages/gp_en.pdf (last visited July 19, 2006) (outlining options to facilitate damages claims for breach of antitrust law); Woods, <u>supra</u> (stating that "[t]he Commission is currently looking at ways in which actions before courts by private parties to punish breach of the Community competition rules can be encouraged"); Gregory P. Olsen, <u>Enhancing Private Antitrust Litigation in the EU</u>, Antitrust, Fall 2005, at 73 (stating that "[t]he Commission is determined to facilitate the growth of private antitrust litigation" and "is now assessing options for stimulating private antitrust enforcement").

[13]     The Plaintiffs assert that "[f]airness not only allows but compels that Defendants be held accountable for [the] intended injuries to the EU Plaintiffs and that Defendants not be permitted to profit from their illegal conduct."  Pls.' Mem. 25.

to private plaintiffs, and the Plaintiffs already unsuccessfully litigated their argument that the

domestic effects of the Defendants' conduct are intertwined with the foreign effects of that

conduct that allegedly resulted in the European Union direct vitamins purchasers' injuries.  Pls.'

Mem. 25-27, 29-31.

As the Court's analysis reveals, granting Rule 60(b)(6) relief would be of no avail to the

Plaintiffs in this case because the Court lacks supplemental jurisdiction over the very claims the

Plaintiffs seek relief to pursue, and the factors of judicial economy, convenience and comity

weigh against exercising such jurisdiction even if it were available to the Plaintiffs.  There is,

therefore, no extraordinary circumstance that warrants Rule 60(b)(6) relief.

### III.

With regard to the Plaintiffs' request that the Court exercise supplemental jurisdiction

over the Merck Settlement Agreement – which was a $10 million settlement reached in 2003 and

subsequently stayed by this Court in 2004 – the same jurisdictional analysis the Court previously

employed applies.  The Court lacks original jurisdiction over any claim the Plaintiffs can resort to

for supplemental jurisdiction.  Although the Plaintiffs point out that the Agreement reportedly

"specifically contemplated the possibility that this Court ultimately could be found to lack

subject matter jurisdiction over the foreign plaintiffs' claims" and "the parties have consented to

the jurisdiction of this Court for the purposes of settlement administration . . . [,]" Pls.' Mem. at

33, it is well-established that "lack of jurisdiction of a federal court touching the subject matter of

the litigation cannot be waived by the parties . . . ."  United States v. Griffin, 303 U.S. 226, 229

(1938).  As a result, because the Court lacks original jurisdiction over any claim upon which

supplemental jurisdiction over the Merck Settlement Agreement would be appropriate, there is

no basis for granting the Rule 60(b)(6) relief sought by the Plaintiffs.

**CONCLUSION**

For the reasons set forth above, the Court will deny the Plaintiffs' Motion For Relief

From Final Judgment.  An appropriate Order will accompany this Memorandum Opinion.


August 1, 2006                                          /s/
                                              Thomas F. Hogan
                                              Chief Judge